IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No. ELH-14-271 |
| KEYON PAYLOR | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## REPLY TO GOVERNMENT'S CONSOLIDATED OPPOSITION TO MOTION TO PRETRIAL MOTIONS

Defendant Keyon Paylor, by and through his undersigned counsel, James Wyda, Federal Public Defender for the District of Maryland, and Brendan A. Hurson, Assistant Federal Public Defender, hereby responds to the Government's Consolidated Opposition to Paylor's Pretrial Motions. ECF/CM # 39 (hereinafter "Government Response"):

The government concedes that police officers "entered onto Mr. Paylor's property" without a warrant. Response, 1. It claims that the entry onto the property was justified under the "exigent circumstances" exception to the Fourth Amendment's warrant requirement to pursue a "fleeing suspect, whom they reasonably (and accurately) believed was unlawfully carrying a handgun . . . ." Id. The government also alleges that Mr. Paylor's purported statement to police was admissible because it was entirely "spontaneous, voluntary, and unprompted by questioning or compulsion of any kind." Id. Mr. Paylor disagrees with both contentions.

### FACTS NEED TO BE DETERMINED

As a threshold matter, the arrest of Mr. Paylor occurred nearly fourteen (14) months ago. The

lone written record of the event comes in the form of a Statement of Probable Cause drafted by one of the four officers involved. The Response, and a more recent filing seeking permission to introduce purported 404(b) evidence (see ECF/CM #55) add to, or amend, the critical facts found in the lone sworn factual summary authored months ago. Many of these facts are critical to the Court's analysis of the legality of the arrest of Mr. Paylor, the search of Mr. Paylor's property, and the admissibility of his statement. As such, analysis is somewhat limited without hearing the sworn recollection of the officers involved. Regardless, Mr. Paylor bases this Reply on the facts contained in the Response and in the Statement of Probable Cause.

## ARGUMENT

**A.     No Probable Cause Existed to Believe Mr. Paylor Committed a Crime, thus Mr. Paylor's Arrest and the Search of His Residence Were Illegal.**

The government posits that probable cause existed to arrest Mr. Paylor based upon three purported police observations:

[1]   When the officers first saw Paylor, he picked up his pace, ran onto the porch of 647 Bartlett, and then hopped the walls of two adjoining porches.

[2]   As Paylor was fleeing from the officers, Detective Moore saw him reach into his waistband and remove a large black object, which he placed under a seat cushion on the front porch of his home (651 Bartlett).

[3]   When the officers ordered Paylor to stop, he retreated into his residence through the front door.

Response, 5. Even assuming these facts to be true, they do not amount to probable cause to arrest Mr. Paylor and search his home.

**1. Purported flight from plain-clothed officers is of little probative value.**

The government concedes that it was Mr Paylor's purported observation of the four plain-clothed officers that caused his quickened pace. Response, 2 ("When the officers first observed Paylor, he looked over his shoulder (in the officers' direction) and immediately picked up his pace."). However, the officers approached Mr. Paylor in an unmarked car with no indication, whatsoever, that they were police. See Statement of Probable Cause, 1 ("Detectives [names omitted] (working in plain clothes in an unmarked vehicle) were traveling south in the 600 block of Bartlett Ave. . . ."). It is unclear whether Mr. Paylor's "quickened" pace and actions at the purported sight of the unmarked police vehicle constitutes "unprovoked flight upon noticing *the police*" sufficient to be considered in the probable cause/reasonable suspicion analysis. See Illinois v. Wardlow, 528 U.S. 119, 124 (2000) (allowing unprovoked flight in the face of a known police presence to permit, at most, an investigatory detention to investigate).

Regardless, a decision to run from the police, without more, fails to establish a basis for an arrest. See, e.g., Florida v. Bostick, 501 U.S. 429, 437 (1991) ("We have consistently held that a refusal to cooperate [with police], without more, does not furnish the minimal level of objective justification needed for a detention or seizure."); United States v. Navedo, 694 F.3d 463, 474 (3d Cir. 2012) ("[A] person whom police approach is free to avoid a potential encounter with police by leaving the scene, and the rate of acceleration of the person's gate as s/he leaves away is far too ephemeral a gauge to support a finding of probable cause, absent some other indicia of involvement in criminal activity."); Florida v. Royer, 460 U.S. 491, 497-98 (1983) ("The person approached [by police], however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way."). Thus, Mr. Paylor's decision to flee the plain-clothed

3

officers provides little, if any, justification for his subsequent arrest.

### 2. The additional observations of officers did not amount to probable cause.

In any event, the proffered facts fail to establish probable cause to believe Mr. Paylor committed a crime. "Although the concept of probable cause resists an exacting definition, it exists where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found in a particular place." United States v. Hurwitz, 459 F.3d 463, 473 (4th Cir.2006) (citations omitted). As noted, the purported flight of Mr. Paylor in the face of four men is not probative of criminal activity. Further, Det. Moore's alleged observation of the removal of a "black object" and its placement under a cushion, occurring on Mr. Paylor's own property, fails to establish probable cause to arrest and search that property. The government is clear that Det. Moore does not know if the object is, in fact, a weapon. Instead, it merely claims that his "his training, knowledge, and experience" led him to "suspect" it might be a weapon. Response, 2. Even assuming this to be enough to establish the possible presence of a firearm, there is nothing in and of itself illegal about possessing a handgun on one's own porch.

Though the government alleges that another officer in the car (Sgt. Burns) was familiar with Mr. Paylor from "previously participat[ing] in executing a search warrant at Paylor's residence," Response, 2, this information does not add to the probable cause analysis. First, there is no indication that this information was shared with Det. Moore, the only officer who made the alleged observation of Mr. Paylor holding the "black object." Further, the facts of that prior event – the admission to the constructive possession of two guns found inside a private residence three years earlier – are so dissimilar to the instant event as to be essentially irrelevant to the probable cause

4

analysis here.[1] The observations of Det. Moore fail to rise to probable cause that a crime occurred, thus Mr. Paylor's arrest, the entry into his home, and the search of the premises was unlawful.

B.     **In the Alternative, Mr. Paylor Submitted to an Unlawful Show of Authority and Thus the Evidence Secured as a Result of That Seizure Must be Suppressed.**

Officers ordered Mr. Paylor to "stop" based merely upon his purported flight from a four-door sedan full of plain-clothed men. This show of force and command to stop was unlawful. In the face of this command, the government's proffered facts suggest that he *did* stop for police, on his own property, and then purportedly reached into his waistband to grab a "large black object" and place it under a seat cushion nearby. Thus, the facts reveal that he submitted to an *unlawful* assertion of authority. See California v. Hodari, D., 499 U.S. 621, 626 (1991) (noting that an arrest "requires either physical force . . . or, where that is absent, submission to the assertion of authority"). As such, the evidence secured as a result of that submission must be suppressed.

C.     **No "Exigency" Existed Sufficient to Support the Warrantless Entry Into Mr. Paylor's Home or the Warrantless Search of His Property.**

It is hornbook law that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment —subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). Moreover, entry into a home to arrest a suspect, even one for which probable cause exists to believe he has committed a crime, requires a warrant. Payton v. New York, 445 U.S. 573, 590 (1980).

---

[1] As noted, the government recently requested that the Court permit it to introduce evidence of the results of that search in its case-in-chief. The undersigned will respond to that motion under separate cover but, suffice to say, the government's contention that the law supports the admission in this case of evidence related to two guns recovered from a private residence over three years earlier rests on infirm ground.

The government concedes that officers entered Mr. Paylor's home to arrest him and conducted a search of his property without a warrant. Response, 3. Recognizing this fact, the government rests the legality of the entry into, and search of, Mr. Paylor's home on the "exigency" exception to the Fourth Amendment. Response, 4 (citing United States v. Santana, 427 U.S. 38 (1976)). However, in Santana there was no dispute that officers possessed probable cause to arrest a defendant who fled into her home to avoid arrest. Id. at 43 ("It is not disputed here that the officers had probable cause to arrest Santana and to believe that she was in the house. In these circumstances, a warrant was not required to enter the house to make the arrest . . . .) (White, J., concurring). Here, probable cause did not exist to believe Mr. Paylor had committed a crime. See, supra Section A. Thus, Santana is inapposite.

Even assuming probable cause or, absent that, some authority to temporarily detain Mr. Paylor under a Terry v. Ohio, 392 U.S. 1 (1968)[2] analysis, this authority did not extend to permit a full-blown search of Mr. Paylor's porch and property. It is critical to note that officers did *not* confirm the presence of a firearm in the area until they conducted a search of Mr. Paylor's property. The facts reflect that officers entered the home and arrested Mr. Paylor before they searched the porch area and purportedly discovered a firearm. Thus, it is impossible to justify his arrest and search on the ground that the presence of a firearm created an exigency since that exigency was discovered only *after* the completion of the search. United States v. Poole, 718 F.2d 671, 676 (4th Cir. 1983) (noting that exigency cannot rest on "post-hoc" rationalizations "by an officer who could not conceivably have acted upon any notion that exigency existed at the critical time" he engaged

---

[2] Mr. Paylor does not concede that officers had reasonable suspicion to detain him or search him. Accordingly, he disagrees with the applicability of the caselaw cited by the government related to warrantless entries into a home to effect a Terry stop. See Response, 4.

in the search). As such, it is difficult, if not impossible, for the government to maintain that officers had legal authority to arrest Mr. Paylor and search his property.

Even assuming police had probable cause to believe a firearm was located on the premises, police still should have secured a warrant to search. It bears noting that "exceptions to the warrant requirement are 'few in number and carefully delineated,' . . . and that the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." Welsh v. Wisconsin, 466 U.S. 740, 749-50 (1984) (internal citations omitted). Further, "[f]or exigent circumstances to justify a warrantless search, however, there must also be "no time to secure a warrant." Missouri v. McNeely, 133 S. Ct. 1552, 1572, 185 L. Ed. 2d 696 (2013) (citations omitted). Here, officers arrested Mr. Paylor at 11:00 a.m. on a work day, less than a four minute drive from the nearby District Court.[3] He was in custody at the time of their search, and the residence was completely secured by the presence of four officers. Had they wished, they easily could have complied with the Fourth Amendment by proffering their observations, under oath, to a neutral and detached judge in order to secure permission to search the porch.

Even assuming officers had probable cause to believe a firearm was present on Mr. Paylor's property, the mere possible presence of a firearm does not, as the government suggests, *always* create an exigency sufficient to overcome the Fourth Amendment's warrant requirement. See, e.g., United States v. Johnson, 22 F.3d 674, 680 (6th Cir. 1994) ("The mere presence of firearms does not create exigent circumstances.") Groh v. Ramirez, 540 U.S. 551, 559 (2004) ("Thus, 'absent exigent circumstances, a warrantless entry to search for weapons or contraband is unconstitutional even

---

[3] The Eastside District Court is located at 1400 East North Avenue, Baltimore, MD 21213, less than an eighth of a mile from Mr. Paylor's home.

7

when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within.'") (additional citations omitted); United States v. Simmons, 661 F.3d 151,158 (2d Cir. 2011) ("Thus, before conducting the search, the officers had effectively allayed the safety concerns that justified their initial questioning of [the defendant] and had, by exercising control over a compliant occupant and the surrounding premises, neutralized any threat that [he] or the gun may have initially posed. In doing so, the officers also eliminated the possibility of the destruction of evidence. Under these circumstances, there simply was no 'urgent need' to further search the home for the gun without a warrant. Of course, absent such an urgency, the gun alone did not justify the officers' search of the bedroom.") (internal citation omitted); United States v. Bates, 84 F.3d 790, 795 (6th Cir. 1996) ("The presence of a weapon creates an exigent circumstance, provided the government is able to prove they possessed information that the suspect was armed and likely to use a weapon or become violent . . . [but e]vidence that firearms are within a residence, by itself, is not sufficient to create an exigency to officers when executing a warrant."); United States v. Dawkins, 17 F.3d 399, 406 (D.C.Cir.1994) ("[W]e have never found exigency solely on the basis that police have information that firearms are located in a private home.") (emphasis in original).

  The only authority provided by the government to justify a warrantless search under so-called "exigent circumstances" related to the presence of firearms rested on the obvious and immediate presence of a firearm in the presence of dangerous individuals, or on the fact that a likely firearm might be located in a more public space than the location in this matter. See Response, 6 (citing United States v. Jenkins, 426 F. Supp. 2d 336, 343 (E.D.N.C. 2006) (finding that exigent circumstances for a warrantless search existed when uniformed officers responded to a call of shots fired to see a man run across the street in response to their presence, bend down between two cars

parked in the yard. and make a throwing motion before running again)[4]; United States v. Reed, 935 F.2d 641, 642 (4th Cir. 1991) (warrantless entry permitted when officers entered a mobile home after finding the door wide open and seeing a man sleeping on the couch with a sawed-off shotgun resting eighteen inches from his feet); United States v. Decator, 1997 WL 770609 at * 8 (4th Cir. Dec. 11, 1997) (unpublished) (permitting the warrantless search of a bag when a man suspected of participating in an armed bank robbery had just hurled that bag into a mall full of bystanders while being chased by men he knew to be police officers); United States v. Rodgers, 924 F.2d 219, 220 (11th Cir. 1991) (upholding seizure of two handguns (not a search) when those guns were seen, in plain view by an officer who knew the home's occupant was a convicted felon and was not allowed to possess firearms).

    Here, one officer claims to have seen Mr. Paylor holding a "black object" as he entered his property, a far cry from the observations noted in the cases cited by government. Further, there was no contention that Mr. Paylor was presently dangerous and no additional exigencies that might justify a warrantless search. With four officers present and Mr. Paylor secure, nothing prevented officers from simply securing the residence and seeking a warrant. Indeed, if officers believed they had probable cause to search the residence, the law may have supported their warrantless entry and continued presence on Mr. Paylor's property as long as they attempted to obtain a warrant. See Segura v. United States, 468 U.S. 796, 798 (1984) ("Specifically, we hold that where officers, having probable cause, enter premises, and with probable cause, arrest the occupants who have legitimate possessory interests in its contents and take them into custody and, for no more than the period here

---

[4] Although not mentioned in the Response, the Jenkins court held that the area under a parked car was not a protected area under the Fourth Amendment. Here, the search occurred on Mr. Paylor's porch, a protected area under the Fourth Amendment.

involved, **secure the premises from within to preserve the status quo while others, in good faith, are in the process of obtaining a warrant**, they do not violate the Fourth Amendment's proscription against unreasonable seizures.") (emphasis added). No exigency existed sufficient to overcome the warrant requirement.

### D. Officers Unlawfully Created Their Own Exigency

At best, the facts reflect that police created their own exigency when they chased Mr. Paylor onto the steps of his porch for no lawful reason and ordered him to "stop." Under certain circumstances, even police-created exigencies permit unlawful entry and a warrantless search to prevent the destruction of evidence. See Kentucky v. King, 131 S. Ct. 1849, 1858 (2011). However, when the police create an exigency in bad faith or without a valid basis, they cannot claim the benefits of the exigency exception. Id. at 1858 n. 4.

### E. Mr. Paylor's Statement is Inadmissable.

The Fifth Amendment guarantees that "[n]o person ... shall be compelled in any criminal case to be a witness against himself," U.S. Const. Amend. V. The Supreme Court has held that interrogation in certain custodial circumstances is inherently coercive and thus statements made under those circumstances are inadmissible unless the suspect is specifically informed of his rights under Miranda v. Arizona, 384 U.S. 436, 444 (1966), and freely decides to forgo those rights. See New York v. Quarles, 467 U.S. 649, 654 (1984) For purposes of Miranda, "interrogation" is "either express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 300–01 (1980).

The government apparently concedes that Mr. Paylor was in custody at the time he made his

allegedly incriminating statement. It claims, however, that Mr. Paylor "volunteered his statement spontaneously and on his own initiative, not in response to questioning" or, presumably, its "functional equivalent." Response, 7. Until the facts surrounding Mr. Paylor's arrest and detention are established at the forthcoming hearing, no meaningful argument can be presented regarding whether Mr. Paylor's statement was the product of questioning or its functional equivalent. Thus, Mr. Paylor reserves the right to respond to this issue after the facts are elicited at the Motions hearing.

For the reasons contained in Mr. Paylor's Motions to Suppress Evidence, those noted above, and those to be argued at the April 21, 2015 hearing, the evidence seized from Mr. Paylor's property in violation of the Fourth Amendment must be suppressed. Further, for these same reasons, Mr. Paylor's alleged statement to police must also be suppressed.

    Respectfully submitted,

    JAMES WYDA
    Federal Public Defender

    _____/s/_____
    BRENDAN A. HURSON (Bar # 28179)
    Assistant Federal Public Defender
    100 South Charles Street
    Tower II, Ninth Floor
    Baltimore, Maryland  21201
    (410) 962-3962 (p)
    (410) 962-0872 (f)
    brendan_hurson@fd.org